UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Civil No.11-cr-0139 L   (WMc) |
| ) | |
| Plaintiff, ) | |
| v. ) | ---------------------------- |
| ) | RULING RE PRE-TRIAL RELEASE VIOLATION |
| PATRICIO LOPEZ-GARCIA ) | |
| ) | |
| Defendants. ) | |
| ) | |

In the first superseding indictment, the United States Government charged defendant Patrizio Lopez-Garcia with transporting illegal aliens and conspiracy to transport illegal aliens. The government alleges the conspiracy began no later than 2004 and continued up to and including the date of the indictment, April 20, 2011. The government further alleges defendant continued to engage in transporting and aiding and abetting illegal aliens while out on pretrial release thus violating the conditions of release. The Court heard argument and testimony regarding the alleged violation. The Court now considers whether defendant violated his pretrial release, and if so, what appropriate recourse applies.

**Facts**

On December 22, 2010 Border Patrol Agents arrested defendant. The next day, the government filed a complaint charging defendant with violating the immigration laws of the United States by transporting two illegal aliens, José Florez-Ruiz (aka Javier Villa-Calderon) and Ricardo Perez-Ponce in violation of Title 8 U.S.C. §1324 (a)(1)(A)(ii). In the probable cause statement that accompanied the complaint, the same two illegal aliens gave definitive evidence implicating defendant in their illegal

entry into, and movement within, the United States.  On December 23, 2010, the Court set conditions for pretrial release. [Doc. No.7.]  Shortly thereafter, the Court released defendant on bond.  On April 20, 2011, the government filed a first superseding indictment, charging defendant with, among other things, conspiracy to bring illegal aliens into the U.S. for financial gain, transporting illegal aliens, harboring illegal aliens and aiding and abetting.  The government alleges this conspiracy lasted for at least seven years. On April 28, 2011, Pretrial Services filed a petition for summons for defendant on pretrial release, alleging that defendant conspired to bring in illegal aliens for financial gain, to transport illegal aliens, and to harbor them in violation of federal law, *while* on pretrial release. Border Patrol Agents took defendant into custody and the Court conducted a hearing on the pretrial release violations on May 19, 2011.

**Legal Standard**

Title 18 U.S.C. Section 3148(b) governs violations of conditions of pretrial release.  Under that statute, the court *must* enter an order of revocation and detention *if* the court finds (1) probable cause that the defendant committed another federal, state, or local crime during release, *or* (2) clear and convincing evidence the defendant violated some *other* condition; *and*, (3) no conditions will guarantee that defendant will not flee and will not pose a danger to some person or the community, *or* (4) the defendant is unlikely to abide by any set of conditions.[1] .  If the court finds probable cause to believe the defendant violated the federal, state or local crime, a rebuttable presumption arises that no appropriate conditions of release exist.  However, if the court finds conditions to assure it that the defendant will not flee and will not pose a danger to the community, the court must follow 18 U.S.C. §3142 and may amend the conditions of pretrial release accordingly.[2]

/////
/////
/////
/////

---

[1] 18 U.S.C. §3148 (b)(1)

[2] *Id.*

## **Analysis**

*A. Key Chronology*

The chronology of key events bears critically on the issues before the Court. Therefore, the Court provides the chronology of events below:

| DATE | EVENT |
| --- | --- |
| December 22, 2010 | Defendant arrested. |
| December 23, 2010 | Complaint filed. The probable cause statement supporting the complaint stated: "LOPEZ was read his Miranda rights and stated that he understood them and was willing to answer questions without the presence of an attorney. LOPEZ stated on Tuesday, December 21, 2010, he was in Tijuana, Mexico visiting family. LOPEZ stated he arrived at his family home in Jamul, California at approximately 10:00 PM that evening and two unknown males were there with his family. LOPEZ stated he allowed them to rest and spend the night in his house. LOPEZ stated the following morning at approximately 8:00 AM, the younger male, later identified as José FLORES-Ruiz, contacted a family member to deposit $400 in a Money Gram account. LOPEZ stated the Money Gram account was placed under his name. LOPEZ stated Florez and the other older male, later identified as Ricardo PEREZ-Ponce, were to pay him $100 in exchange for a ride to Temecula, California. LOPEZ stated the remaining $200 was just additional money which was to be given to FLORES." In addition, Border Patrol Agents Constance and Byland spoke with Lopez, who was driving a truck that carried two illegal aliens. The two occupants admitted they were citizens of Mexico and did not have any immigration documents allowing them to be in the United States legally. One of the illegal aliens, Perez, told the Border Patrol agents the two illegal aliens had walked through the mountains until they reached Lopez's house. |
| December 27, 2010 | Court set conditions for pretrial release. [Doc. No. 7.] |
| January 4, 2011 | Defendant released on bond. |
| January 12, 2011 | Indictment filed, charging Lopez with transporting illegal aliens, namely, José Florez-Ruiz on or about December 22, 2010. The indictment does not allege any conspiracy. |

| | |
|---|---|
| January 25, 2011 | • Border Patrol Agents Jimmy Byland and Emidio Alferez interviewed illegal alien Javier Ribas-Castillo, an alleged foot guide for illegal alien Eliodoro Rascon-Rivas. Ribas identified a ranch in Jamul located at 13636 Hillside Dr., the location of Defendant's home and workplace.<br>• On the same date border patrol interviewed Eliodoro Rascon-Rivas |
| February 1, 2011 | Court signed and filed order permitting deposition of material witness, José Florez-Ruiz [Doc. No. 22.] |
| February 3, 2011 | Border Patrol verified Defendant's residence as 13636 Hillock Side Dr. by conducting a home visit. |
| February 25, 2011 | In a complaint filed on February 28, 2011 material witness Matias Hernandez-Garcia was identified. The complaint alleges that on February 25, 2011, Border Patrol Agents Jacob Constance and Jimmy Byland were performing anti-smuggling surveillance near the place where defendant resides. The agents questioned two illegal aliens: Matias Hernandez-Garcia and Juventino Avendano-Serrano at the Jamul ranch. In the probable cause narrative attached to the February 28, 2011 complaint, Hernandez stated that defendant participated in alien-smuggling activities for at least 9 years and has seen defendant Lopez smuggle aliens several times. |
| March 24, 2011 | Material witness Ricardo Perez-Ponce was deposed |
| March 29, 2011 | • Court signed order releasing material witness Ricardo Perez-Ponce. [Doc. No. 33.]<br>• Court signed order allowing the deposition of material witness Matias Hernandez-Garcia [Doc. No. 35.] The deposition was scheduled to take place on May 11, 2011. |
| April 12, 2011 | Material witness José Florez-Ruiz aka Javier Villa-Calderon was deposed, a second deposition of this material witness was to be scheduled, but Mr. Barr decided after a brief visit with Mr. Schroth and José Florez-Ruiz a second deposition was not necessary. |

| | | |
|---|---|---|
| April 20, 2011 | | Government filed first superseding indictment. For the first time the government alleges a conspiracy to transport illegal aliens that began no later than 2004, and continuing up to and including April 20, 2011. The indictment specifically mentions José Florez-Ruiz, aka Javier Villa-Calderon. All the overt acts specifically identified in the indictment concerning the conspiracy occurred on or before December 22, 2010. However, in count 1, the government alleges the conspiracy began no later than 2004 and continued up to and including April 20, 2011 within this district. |
| April 28, 2011 | | • Pretrial Services filed request for summons for defendant. Lopez to appear on May 10, 2011 at 9 AM to show cause why his pretrial release should not be revoked. [I signed this order on April 26, 2011.] [Doc. No. 48.] |
| | | • I filed a written order authorizing the additional deposition of material witness, José Florez-Ruiz and reset the bond revocation hearing to made 12 2011 at 9 AM. [Doc. No. 51.] |
| May 11, 2011 | | The parties file a joint stipulation to the release of the Material Witness, Ricardo Perez-Ponce. [Doc. No. 50.] |
| May 19, 2011 | | Court hearing held on the alleged pretrial release violations. |

*B. Right To Confront*

Defendant argues he did not have the opportunity to confront the illegal aliens whose statements formed a material part of the allegations regarding the pretrial release violation(s). Assuming, without deciding, a defendant has a right of confrontation in the context of an alleged pretrial release violation, the Court finds defendant's right satisfied in this case.

Defendant urges the court to follow *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999). In *Comito*, the court weighed the supervised release prisoner's right to confrontation against the admission of adverse hearsay testimony of a witness reporting the victim's unsworn verbal statements regarding the alleged release violation. *Id.* at 1170-71. *Comito* is instructive, although distinguishable, for several reasons. In *Comito,* the unsworn witness was the defendant's girlfriend who gave completely contradictory unsworn statements to the government and to the defendant's attorney. *Id*. 1168-69. The

contradictory statements could not be reconciled: either the girlfriend was lying to the government or to the defendant's attorney. *Id*. The girlfriend's statements to the government were inculpatory, whereas her statements to the defendant's counsel were completely exculpatory. *Id*. Both statements were unsworn hearsay: one serving to establish the defendant had violated the conditions of his supervised release; the other statement serving to prove the defendant had not violated the conditions of his pretrial release. *Id*. In such a situation, the presence of the witness was critical to establish which statement was true. The witness' testimony needed to be explored on cross examination and the Court needed to assess the witness' credibility. *See id.* at 1171.

No such factual scenario exists in the present case. There was no critical contradictory statement from a single witness which forme The heart of the case. Rather the allegations of h violations of pretrial release conditions resulted from the statements and testimony of multiple witnesses as well as a credible Erder patrol agents. . Moreover, as the above chronology shows, defense counsel deposed the two material witnesses identified in both the complaint and in the first superseding indictment. In addition, the Court gave counsel permission to depose material witness José Florez-Ruiz (aka Javier Villa- Calderon) a second time. However, after interviewing the material witness, counsel for defendant decided a second deposition was unnecessary. Thus, in the instant case, the right to confront has been satisfied because defendant in fact deposed the two material witnesses and had the opportunity to re-depose material witness José Florez-Ruiz (aka Javier Villa-Calderon) but decided not to do so.

*C. Probable Cause Exists To Believe A Violation Has Occurred*

Defendant argues that the first superseding indictment does not identify any overt acts that occurred after December, 2010. Defendant reasons that the absence of any specifically identified overt acts after December, 2010 means, by inference, no overt acts existed after December 2010. However, that interpretation flies in the face of the actual language of the first superseding indictment which alleges, among other things, the alleged conspiracy began "no later than 2004 and [continued] up to and including April 20, 2011..." the Government's decision not to specifically identify any overt acts occurring after December, 2010 does not mean no such overt acts occurred. This omission does not prove, or tend to prove, no overt acts existed after December 2010.

The evidence presented at the hearing satisfies the Court that probable cause exists to believe defendant violated a federal law while on pretrial release as alleged in the petition for summons for defendant on pretrial release. The conditions of release required defendant to abstain from committing a federal, state or local crime during the period of his release. The evidence presented demonstrates to the Court's satisfaction there is probable cause to believe that during his pretrial release the defendant participated in transporting, harboring and/or aiding and abetting illegal aliens for financial gain.

*D. Remedy*

Because the Court finds probable cause that defendant violated the conditions of his pretrial release,"a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."[3] However, "[I]f the judicial officer finds that there are conditions of release that will assure that the person will not flee, or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly."[4]

After assessing the factors under Title 18, Section 3148(g) the Court is satisfied it can set conditions to ensure defendant's compliance with amended conditions of his pretrial release. In making this determination, the following factors strongly influenced the Court. *First*, defendant is a permanent resident of the United States. *Second*, for at least the past 15 years, defendant has lived at the same address and worked for the same employer (Rancho Del Sol Estates) in Jamul, California. *Third*, defendant has a scant criminal history consisting of only two events: the current criminal charge and an alien smuggling event in 2009 for which prosecution was declined. *Fourth*, Mr. and Mrs. Bill Zaiser, defendant's employers, have both previously agreed to serve as sureties on his behalf, indicating trust in defendant's compliance. *Fifth*, defendant is married and his wife lives with him at his current residence. *Sixth*, defendant has strong ties to the Southern California community and produced for the court numerous letters of support from friends, fellow church members and his current and previous pastors. *Seventh*, the government has not argued the defendant is a danger to the community and there is no

---

[3] Title 18 U.S.C.§3148 (b)

[4] Title 18 U.S.C.§3148 (b)

evidence to the contrary. *Eighth*, defendant has lived in this community for the past 17 years. Thus, he has lived more than half his adult life in southern California. *Finally*, given the defendant's criminal history, it is unlikely he will face such a long prison term he would be motivated to flee. Given all the above factors, the Court believes it can set conditions that will ensure defendant's compliance with his pretrial release conditions.

Therefore, the Court reimposes the same conditions of pretrial release as previously existed, with the following two exceptions. First, defendant must post a real property bond in the amount of $25,000. Second, defendant must wear an active GPS system with a curfew reasonably set by Pre-Trial Services. Defendant will bear the cost of the GPS system.

IT IS SO ORDERED.

Date: June 23, 2011

                                              Hon. William McCurine, Jr.
                                              U.S. Magistrate Judge
                                              United States District Court